**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re:  ADAM AIRCRAFT INDUSTRIES, INC.,

     Debtor.

------------------------------

JEFFREY A. WEINMAN, Chapter 7 Trustee,

     Plaintiff - Appellant,

v.

JOSEPH K. WALKER,

     Defendant - Appellee.

No. 14-1236

_____

**APPEAL FROM THE BANKRUPTCY APPELLATE PANEL**
**(BAP NO. 13-49-CO)**
_____

Theodore J. Hartl, Lindquist & Vennum, Denver, Colorado, for Plaintiff-Appellant.

Thomas H. Blomstrom, Montgomery, Kolodny, Amatuzio & Dusbabek, L.L.P., Denver, Colorado, for Defendant-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, and **HARTZ** and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

Plaintiff Jeffrey Weinman is the Chapter 7 Trustee for Adam Aircraft Industries ("AAI").[1] Defendant Joseph Walker was an officer of AAI and served as its president and as a member of its Board of Directors (the "Board") from 2004 through early 2007. Throughout his employment, Walker had neither a written employment contract nor a severance agreement with AAI.

In February 2007, the Board decided it wanted to replace Walker as both president and as a board member. Since AAI did not want Walker's termination to disrupt its ongoing negotiations with Morgan Stanley for debt financing, AAI suggested that Walker could voluntarily "resign" in lieu of termination and could also continue to support the company publicly. Subsequently, Walker agreed. AAI and Walker executed a Memorandum of Understanding ("MOU") on February 13, 2007, outlining the terms of Walker's separation, and they also embodied these terms in two Separation Agreements and Releases executed on February 13 and May 18, 2007.

On February 15, 2008, about a year after terminating Walker, AAI declared bankruptcy. It then sued in bankruptcy court to avoid further transfers to Walker, to recover some transfers previously made to Walker, and to disallow Walker's claim on AAI's bankruptcy. It proceeded under 11 U.S.C. §§ 502, 547, 548, and 550. The bankruptcy court denied AAI's claims under §§ 502 and 550. Regarding its claims under §§ 547 and 548, the court ruled against AAI on its § 548 claims but held that under § 547(B) AAI could avoid 90 days' worth of the monthly severance payments

---

[1] Since Weinman is AAI's bankruptcy trustee, the plaintiff here will be referred to as AAI rather than Weinman.

paid before the petition date—totaling $62,500.02—as ordinary preference to a creditor. The Bankruptcy Appellate Panel ("BAP") affirmed this ruling in its entirety. AAI now appeals the ruling regarding its claims under § 548, arguing that its obligations and transfers to Walker are avoidable under the statute on two alternative bases. Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we AFFIRM the BAP's decision.

## BACKGROUND

### A. Factual Background

Joseph Walker served as the president and a board member of AAI from 2004 through early 2007. Throughout his time at AAI, Walker had neither an employment contract, nor a severance agreement, nor a non-compete agreement with AAI.

The relevant events here begin in early 2007, when the Board decided that it wanted to replace Walker and requested his resignation in lieu of firing him. On the night of February 1, George "Rick" Adam, AAI's founder, chairman, and CEO, met with Walker to relay the Board's decision—the first inkling Walker had that the Board was even discussing this, much less that it had already resolved the issue.[2] During this meeting, Adam and Walker discussed the possibility of Walker's resigning rather than being terminated. Adam testified that this course of action was important to the Board because AAI was in the final stages of debt financing with

_____

[2] In a somewhat cruel twist, one of Walker's tasks earlier that same day was to give a tour of AAI's facilities to Duncan Koerbel, the man Walker did not know the Board had already picked to replace him as president.

3

Morgan Stanley and did not want Walker's termination to cause any drama in the financial markets that might imperil the deal.

After learning of the Board's decision, Walker returned to his office at AAI on the night of February 1 to collect his belongings. Shortly after midnight, Walker sent an email to Adam and copied another Board member, Sanjeev Mehra,[3] making a variety of requests. Walker's terms included: (1) his staying on retainer as a consultant, with a promise not to compete with AAI, for two years at $250,000 a year; (2) his retaining his current health benefits; (3) AAI's returning of a $100,000 deposit he had put down for the purchase of an airplane; and (4) AAI's refunding of another $100,000 that he had invested in AAI's Series F stock.

Walker met with Mehra on the morning of February 2 and discussed generally the terms he had outlined in his e-mail regarding his resignation. Also that morning Duncan Koerbel, Walker's replacement as president, began his employment as president of AAI. Walker never entered AAI's facilities or performed any functions as president or as a board member of AAI after leaving AAI's facility early in the morning of February 2.

On February 5 the Board—in a telephone meeting—accepted Walker's resignation as president and as an AAI board member. The minutes of the meeting note that Walker's resignation as a director of the company was "effective February 2, 2007." Appellant's App. at 558. At this meeting, the Board appointed John Wolf to

---

[3] Walker copied Mehra on this e-mail because at that time he was the Board's largest outside shareholder and lead director.

take Walker's seat on the Board and formally approved Koerbel's installation as president. The Board also discussed the severance package it would offer to Walker.

In the period between this meeting on February 5 and February 13, Walker and AAI negotiated the terms of his severance. While Walker requested two years of consultant work, the Board proposed 18 months with Walker's pay between months 12 and 18 contingent on his helping to maintain AAI's sales backlog of aircraft purchase orders at a certain level. Walker ultimately accepted this change, with the other terms of the agreement remaining the same as those proposed in his initial e-mail. Walker and AAI executed the MOU outlining these terms on February 13. That same day, they also executed a formal Separation Agreement ("Separation Agreement I"). Separation Agreement I stated that AAI would provide Walker with severance payments in the amounts outlined in the MOU and stated that Walker's "employment with [AAI] terminated effective March 1, 2007." Appellant's App. at 561.

AAI filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code on February 15, 2008, but four important things happened between Separation Agreement I's execution on February 13, 2007, and this date. First, on March 20, 2007, AAI paid Walker $105,704.11—his $100,000 aircraft deposit, plus interest. Second, on May 18, 2007, the parties executed another Separation Agreement ("Separation Agreement II"). Separation Agreement II contained essentially the same terms as Separation Agreement I with one exception: the agreement now stated (with emphasis added to the new language) that Walker's "employment *as President* with

5

[AAI] terminated effective March 1, 2007. [Walker's] *position as field sales liaison began with* [AAI] *effective March 1, 2007*." Appellant's App. at 565 (emphasis added). Third, on July 31, 2007, AAI paid Walker $100,002.00 to repurchase his 16,667 shares of Series F stock at its initial issue price of $6.00 per share. And, finally, between February 2, 2007, and February 15, 2008, AAI paid Walker $10,417.67 twice monthly, amounting to gross severance payments of $250,000.08 over 12 months.

Following AAI's bankruptcy petition, Weinman—acting as trustee—sold substantially all of AAI's assets for a gross purchase price of $10 million on April 15, 2008. Walker's post-resignation contracts were not sold or assigned any value during the sale of AAI's estate.

### B. Procedural Background

As noted above, AAI filed its petition for bankruptcy relief on February 15, 2008, in the United States Bankruptcy Court for the District of Colorado. Walker filed a proof of claim in AAI's bankruptcy case on June 10, 2008. He asserted a claim for $134,931.00, including $10,950.00 as a priority-employee claim based on wages, salaries, and commissions under the MOU, Separation Agreement I, and Separation Agreement II.

AAI filed the complaint underlying this litigation on January 15, 2010. It sought to avoid and recover transfers from AAI to Walker under the MOU, Separation Agreement I, and Separation Agreement II. It argued these transfers were avoidable and recoverable under 11 U.S.C. §§ 502, 547, 548, and 550.

6

The bankruptcy court held a trial on February 12, 2013, and entered its Order on June 21, 2013. Relevant here, the court determined: (1) that Walker ceased being a "statutory insider" under § 548(a)(1)(B)(ii)(IV) after February 1, 2007; (2) that Walker did not fit the case-law definition of a non-statutory insider; (3) that the transfers to Walker did not occur under an employment contract under § 548(a)(1) or (a)(1)(B)(ii)(IV); and (4) that under § 548(a)(1)(B)(i) Walker gave reasonably equivalent value for the transfers he received from AAI. AAI appealed this ruling to the BAP.

The BAP affirmed the bankruptcy court's ruling. It concluded that it was not clear error for the bankruptcy court to find that Walker had ceased being either a statutory or non-statutory insider after February 1, 2007. The BAP also determined that AAI was solvent when it incurred the obligations to Walker, and that AAI received reasonably equivalent value for the transfers to Walker.

AAI appeals the BAP's § 548 rulings. It argues that the transfers to Walker are recoverable and avoidable under § 548 on two alternative bases: (1) 11 U.S.C. §§ 548(a)(1)(B)(i) and (a)(1)(B)(ii)(IV) or (2) 11 U.S.C. §§ 548(a)(1)(B)(i) and (a)(1)(B)(ii)(I).

DISCUSSION

A.  *Standard of Review*

When taking an appeal from the BAP, we review only the bankruptcy court's decision. *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1248 (10th Cir. 2008).

7

The BAP functions as a "subordinate appellate tribunal whose rulings are not entitled to any deference (although they certainly may be persuasive)." *Id.* We review the bankruptcy court's findings of fact for clear error, its legal conclusions de novo, and mixed questions of law and fact de novo. *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997).

*B. AAI's 11 U.S.C. § 548(a)(1)(B)(i), (ii)(IV) Argument*

Before this court, AAI's principal argument is that the obligations and transfers to Walker are avoidable under 11 U.S.C. § 548(a)(1), which provides in relevant part that a trustee:

> [M]ay avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii) . . . (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[4]

Based on the statute's plain language, then, five things must be true before AAI's transfers to Walker can be avoidable and recoverable: (1) the transfers or the obligations to undertake them must have been made within two years of the petition

[4] AAI highlights that the language of this statute was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA"). It cites to *TSIC, Inc. v. Thalheimer (In re TSIC, Inc.)*, 428 B.R. 103, 109–10 (Bankr. D. Del. 2010) for the proposition that the principal purpose of BAPCA's amendment to § 548 was to "enhance[] the ability to recover avoidable transfers and excessive prepetition compensation . . . paid to corporate insiders of the debtor." Appellant's Br. at 13 (quoting *In re TSIC*, 428 B.R. at 109–10). AAI suggests that the transfers to Walker are precisely the type of transactions BAPCA was meant to capture and allow the avoidance and recovery of.

8

date; (2) Walker must have been an insider either when the transfers were negotiated or when the money was paid; (3) the transfers must have been made under an employment contract; (4) AAI must have received less than reasonably equivalent value for the transfers; and (5) the transfers must have been made outside the ordinary course of business.

The parties do not dispute that the transfers were made and the obligations incurred within two years of the petition date. Our consideration focuses on the other four factors, and we note two things at the outset of this analysis: (1) the burden was on AAI to establish all of the factors, *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 535 (1994); and (2) in the absence of even one of the factors, AAI cannot prevail in seeking to avoid and recover Walker's claims.

Here, the bankruptcy court found that Walker's insider status ceased after February 1, 2007. It determined that AAI terminated Walker on that date and that he "made a clean break" as an insider. Appellant's App. at 515. We review this factual determination for clear error. *Anstine v. Carl Zeiss Meditec AG* (*In re U.S. Med., Inc.*), 531 F.3d 1272, 1275 (10th Cir. 2008).

To analyze the bankruptcy court's decision, we first must consider who constitutes an insider for the purposes of § 548. The Bankruptcy Code defines an "insider" as an officer, director, or a person in control of a debtor. 11 U.S.C. § 101(31)(B) (2012). We have held, however, that these categories are illustrative rather than exhaustive, and thus, even someone not specifically listed in the statute can be considered an insider if he or she "ha[s] a 'sufficiently close relationship with the debtor that . . . conduct is made subject to

9

closer scrutiny than those dealing at arm's length with the debtor.'" *In re U.S. Med., Inc.*, 531 F.3d at 1276 (quoting *Rupp v. United Sec. Bank (In re Kunz)*, 489 F.3d 1072, 1078–79 (10th Cir. 2007) (alterations in original)). We traditionally refer to these two categories—those specifically listed in the statute and those not specifically mentioned whose relationship still merits a closer level of scrutiny—as, respectively (and indeed intuitively), statutory and non-statutory insiders.

AAI argues that the bankruptcy court erroneously determined that Walker was neither a statutory nor a non-statutory insider. It highlights that Walker indisputably was a statutory insider before his resignation and that both Separation Agreement I and Separation Agreement II made his date of "separation" or "change of position" March 1, 2007—which was after the MOU from February 13, 2007. Appellant's Br. at 16. AAI thus believes that the bankruptcy court's determination that Walker had been "terminated" immediately on February 1, 2007 was clearly erroneous. *Id.* at 17. Given the lack of case law in our Circuit on this question, AAI points us to *Stanley v. U.S. Bank Nat'l Ass'n (In re TransTexas Gas Corp.)*, 597 F.3d 298 (5th Cir. 2010), and *TSIC, Inc. v. Thalheimer (In re TSIC, Inc.)*, 428 B.R. 103 (Bankr. D. Del. 2010), as cases that support its interpretation. It also cautions that, if we conclude that the BAP correctly affirmed the bankruptcy court, we will frustrate the very purpose of the BAPCA amendments to the Bankruptcy Code.

Walker counters that the bankruptcy court correctly determined his insider status. First, he emphasizes that Koerbel began work as AAI's president on February 2 and that AAI's interpretation here would thus require that AAI had two overlapping presidents.

10

Walker also notes that he never returned to AAI's offices after leaving with his belongings on February 2 and that he was not involved in any of AAI's business decisions after February 1.

We review for clear error the bankruptcy court's finding that AAI terminated Walker on February 1, 2007—and thus ended his status as a statutory insider. We believe there was more than sufficient evidence to support the court's finding that Walker "made a clean break" as an insider on that date. This evidence includes: (1) Koerbel's undertaking of Walker's position as president immediately on February 2, Appellant's App. at 140; (2) Walker's never returning to AAI's premises after February 2; and (3) the minutes of the Board's February 5 meeting, which accepted Walker's resignation as president and director of the company by noting "Walker having submitted his resignation as a director of the Company, effective February 2, 2007." Appellant's App. at 558.

We also affirm the bankruptcy court's determination that Walker could not qualify as a non-statutory insider on this record. AAI only cursorily suggested—in both its brief and at oral argument—that Walker could be considered a non-statutory insider when he negotiated his separation from AAI. AAI's brief focuses almost solely on Walker's status as a statutory insider, and the closest AAI came at oral argument to suggesting Walker's non-statutory insider status was to argue that, because Walker—and not AAI—presented the initial financial terms of his resignation, he enjoyed the type of relationship with AAI that should merit additional scrutiny. AAI also hinted at this in its reply brief. But this is insufficient to satisfy AAI's burden. Absent more evidence, an employee negotiating the terms of his termination soon after learning that the company intended to fire him cannot

11

be considered to possess either the type of control of—or relationship to—a company necessary to constitute a non-statutory insider.

But does the bankruptcy court's determination run counter to *In re TransTexas Gas Corp.* and *In re TSIC, Inc.*? We believe not, and we pause to explain why. We first examine *In re TransTexas*. There, the officer in question had an employment contract with severance language but, when the board decided to terminate him, he negotiated a new Separation Agreement that explicitly superseded his Employment Agreement. *In re TransTexas*, 597 F.3d at 302. Importantly, however, he remained CEO and a member of the board as he negotiated the terms of his departure over two months. *Id.* Walker, by contrast, negotiated the terms of his departure in a little over a week after having already been stripped of his titles, removed all of his personal effects from his previous office, and while performing none of the duties of his previous positions.[5] We perceive a significant and meaningful difference in these facts.

The facts underlying *In re TSIC, Inc.* are also not particularly helpful to AAI. There, the officer in question—Richard Thalheimer—had an employment agreement with the employer that provided for a severance package upon his termination regardless of cause. *In re TSIC, Inc.*, 428 B.R. at 108. Once the board decided to terminate Thalheimer, it then negotiated with him a separate Settlement Agreement requiring that he waive any claim

---

[5] AAI points out that there is nothing to suggest that the officer in *In re TransTexas* continued to perform his duties while negotiating his severance package, but there is also nothing to suggest that he did not. The burden was and is on AAI to demonstrate Walker's insider status, and mere conjecture about the factual basis underlying a decision outside of our Circuit falls woefully short of meeting this burden. This is particularly true here given that AAI must demonstrate that the bankruptcy court's decision was clearly erroneous.

12

to the previously agreed-upon severance package, as well as any other claims against the company. *Id.* The court found that the operative date for considering whether Thalheimer was an insider was the date of his original employment agreement, presumably because this agreement contained the promise of a severance package and this promise—and attendant obligation—led to the negotiation of Thalheimer's eventual Settlement Agreement. *Id.* at 111–113. Since, again, Walker had no employment agreement with AAI, *In re TSIC* provides a factually different scenario that has little relevance to the case before us.

We also do not believe that concluding that Walker was neither a statutory nor a non-statutory insider frustrates the purpose of BAPCA as AAI suggests. AAI's principal claim here is that a ruling for Walker would permit insiders to "reap the benefits of their insider status and resign in exchange for future payments." Appellant's Br. at 10–11. In reviewing the record and the bankruptcy court's findings, we see that although AAI decided to terminate Walker, it asked him to style his termination as a resignation so that the decision to fire him would not imperil the critical $80 million debt financing that AAI was negotiating with Morgan Stanley. Walker proposed terms constraining his conduct after his resignation and—after what the bankruptcy court deemed an arm's-length negotiation[6]—AAI agreed to most of them. Walker has fulfilled the terms of this

---

[6] The arm's-length nature of the negotiation is in part illustrated by the fact that the final terms were not the same as those Walker initially proposed. AAI requested and received a shorter period of severance payments to Walker, as well as the tying of a portion of these severance payments to AAI's sales backlog remaining at a certain level.

13

agreement, but AAI now seeks to renege on its responsibilities by asking this court to retroactively term Walker an insider. We cannot imagine that Congress intended for parties to use BAPCA in this manner.

Given our determination here, we need not consider the three other factors necessary for AAI to recover and avoid its obligations to Walker on this basis, namely: (1) whether the obligations were made as part of an employment contract; (2) whether AAI received reasonably equivalent value in exchange for the obligations;[7] and (3) whether the transfers to Walker were made outside the ordinary course of business. Because we do not find clearly erroneous the bankruptcy court's determination that Walker ceased to be an insider on February 1, 2007, we conclude that the BAP properly affirmed the bankruptcy court's conclusion that AAI is not entitled to relief on its first claimed basis under 11 U.S.C. § 548.

*C. AAI's 11 U.S.C. § 548(a)(1)(B)(i), (ii)(I) Argument*

Even if we determine that Walker was not an insider, AAI still claims the payments to Walker are recoverable and avoidable under what it terms the non-insider portions of § 548. The relevant portion for our consideration here provides that the trustee may avoid any transfer:

> made or incurred on or within 2 years before the date of the filing of the [bankruptcy] petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or

---

[7] We note, however, that our consideration of reasonably equivalent value here would look to the same factors and reach the same conclusion as the analysis of reasonably equivalent value contained below. For that reason, even were we to conclude Walker was an insider when the agreements were negotiated, we still would not grant AAI the relief it seeks.

14

obligation; and . . . was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548(a)(1)(B)(i), (ii)(I). The statute's language requires that a court look at two different series of dates (both the dates when the obligations were initially undertaken and the dates when the transfers were made) and answer two questions about each date: (1) did AAI receive less than reasonably equivalent value?; and (2) was AAI insolvent? AAI can avoid a particular obligation or transfer if—on the date of the particular obligation or transfer—the answer to both questions is yes.

Regarding AAI's attempts to avoid its obligations under §548(a)(1)(B)(i), (ii)(I), the bankruptcy court concluded that the satisfaction of the "antecedent debt" that Walker's MOU and Separation Agreements created constituted "reasonably equivalent value" to preclude avoidance. Appellant's App. at 546–47. The BAP affirmed but based its conclusion on its finding that AAI was solvent in February and March 2007, when the obligations to Walker were incurred.

The bankruptcy court's ruling on this statutory basis was too limited. Neither party contests that—assuming the initial debts to Walker were valid—AAI received reasonably equivalent value when it transferred money to Walker on those debts because these transfers resulted in the lessening of AAI's legitimate antecedent debts. Given the lack of disagreement between the parties over this point, we need not further consider it. The more relevant dates for our analysis occurred in February, March, and May 2007, when AAI's obligations to Walker were incurred through the MOU, Separation Agreement I, and Separation Agreement II. While the bankruptcy court's findings are relevant to that

15

determination, it failed to consider reasonably equivalent value on these dates. We therefore proceed to consider the two statutory inquiries for those dates, mindful that failure to prevail on either prong dooms AAI's claim.

AAI argues that it did not receive reasonably equivalent value from Walker in return for the obligations it undertook in the MOU and Separation Agreements I and II. Under § 548, "'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor . . . ." 11 U.S.C. § 548(d)(2). And the Supreme Court has counseled that § 548's "reasonably equivalent value" inquiry asks "whether the debtor has received value that is substantially comparable to the worth of the transferred property." *BFP*, 511 U.S. at 548. In this context, "'reasonably equivalent' means 'approximately equivalent,' or 'roughly equivalent.'" *Id.* at 538 n.4.

While AAI argues the broader point that all of the obligations it undertook in the MOU and Separation Agreements I and II are recoverable and avoidable, this argument encompasses three separate transactions. They are: (1) the refund of Walker's airplane-purchase deposit; (2) the refund of Walker's Series F stock; and (3) Walker's severance payments. AAI's arguments concerning the airplane purchase and Series F stock are fairly brief. It argues that the "immediate" repayment of Walker's plane-purchase deposit was not met with any similar value and that Walker's Series F stock "was an investment with no guaranty of repayment[,]" so providing Walker money in return for the stock did not constitute reasonably equivalent value. Appellant's Br. at 27. At oral argument, AAI expanded on its point concerning the airplane deposit, arguing that it did not receive

reasonably equivalent value for allowing Walker to receive his deposit back ahead of other creditors.

AAI's arguments regarding the lack of reasonably equivalent value for Walker's severance payments are more extensive. First, AAI points us to two bankruptcy cases from other jurisdictions—*Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 286 B.R. 54 (Bankr. N.D. Ill. 2002), and *Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.)*, 100 B.R. 127 (Bankr. D. Mass. 1989)—to assert that non-compete agreements like the one between Walker and AAI are valueless. AAI argues that Walker provided no value other than this and instead used his insider leverage to gain severance payments, precisely the type of insidious dealing § 548 means to weed out. Finally, AAI suggests that the bankruptcy court concluded that Walker provided no value to AAI for these severance payments, albeit in the context of AAI's arguments under § 547(c).

Walker counters that all of AAI's arguments lack merit. Similar to AAI, Walker's arguments concerning the airplane deposit and Series F stock are fairly brief. Walker first points out that AAI had a contractual obligation to refund his airplane deposit and that AAI admitted as much before the BAP. Concerning the stock repurchase, Walker notes that AAI paid him the exact same price he had paid for the stock months earlier. He also submits that the burden was on AAI to show a lack of reasonably equivalent value for the stock repurchase and that it has failed to do so.

Walker more extensively argues the severance payments. Walker first notes that AAI argued previously that it did not receive reasonably equivalent value because Walker could not identify a later job offer he had to refuse, but Walker argues that this is a classic

17

"Catch-22": he did not seek or obtain other employment precisely because he was following the contractual obligations he entered into with AAI. Walker also submits that the cases AAI presents to this court holding that non-compete agreements lack value concern state contract laws inapplicable here. And finally, Walker highlights the trial evidence he claims shows that AAI linked its chances of obtaining a debt-financing agreement with Morgan Stanley with its not labeling Walker's departure a termination and with Walker's not seeking other employment until AAI began its airplane production in earnest in late 2008. Combined, Walker argues that these circumstances demonstrate that AAI failed to meet its burden to show a lack of reasonably equivalent value.

AAI's decision to only fleetingly argue that it did not receive reasonably equivalent value for the return of Walker's airplane deposit and the repurchase of Walker's Series F stock was wise. On the basis of this record, we believe that no court could reasonably support a finding that AAI failed to receive reasonably equivalent value for these transactions. Once he requested a refund, Walker was returned his airplane deposit plus interest—a contractual requirement entered into when he made the initial deposit—and we do not find his receiving this refund while others later did not to mean that somehow the transaction was not for reasonably equivalent value. Similarly, while it may be difficult to ascertain the market value of Walker's Series F stock, we think that—absent any evidence to the contrary—the amount Walker paid for it months before seems a fair estimated value. And, again, Walker's receiving money in return for the stock while others later did not has no bearing on the analysis here (obviously AAI's financial

condition had deteriorated leading up to bankruptcy in the months after Walker cashed-in his stock).

The arguments concerning a lack of reasonably equivalent value for Walker's severance merit more consideration, but here too we conclude that—based on the record, the bankruptcy court's findings, and AAI's argument before us—no court could reasonably support a finding that Walker did not receive reasonable value. First, we consider the bankruptcy court's findings. The court found that

> Walker agreed to leave [AAI], but asked for certain payments and benefits in return for refraining from taking a position with a competing business, for remaining supportive of AAI as Adam had requested, and for waiving potential wrongful claims against AAI. The evidence supports a finding the directors were willing to grant Walker's requests in exchange for noncompetition, goodwill, and waiver of claims. They could have chosen not to do so, and Walker could have obtained alternative employment in the aircraft industry.

Appellant's App. at 542. The court also reinforced this finding by noting that "[t]he unrebutted evidence indicates Walker holds a high reputation in the industry and could have found another position easily." *Id.*

We see much undisputed support in the record for these findings. While Walker presented the initial terms of his departure, the Board—after a negotiation that resulted in less favorable terms to Walker—agreed to these terms. And the Board's actions and composition are not such that we are inclined to believe—as AAI suggested at oral argument—that it agreed to a sweetheart deal just to do right by Walker. The Board fired Walker without providing him any notice and after having had him unwittingly give a tour of the AAI facility to the man the Board had already decided would replace him. And company insiders did not principally comprise the Board; rather, outside investors

19

filled eight of its ten positions—including the position of lead director. These individuals seemingly took a stake in AAI with the intention of making a profit and would not have agreed to part with a significant amount of money just to placate Walker. The bankruptcy court is correct that the directors seemed willing to grant Walker's requests in return for noncompetition, goodwill, and waiver of claims. And, absent any evidence to the contrary, we cannot see how the Board members would have granted Walker's requests for anything less than what they perceived as reasonably equivalent value.

In addition to the bankruptcy court's findings, we see ample additional record support that could lead a reasonable court only to a finding of reasonably equivalent value. As its bankruptcy a little over a year later demonstrated (and its argument before us that it was insolvent in early 2007 also showed), AAI was not exactly rolling in cash when it terminated Walker. It was in the midst of negotiations for $80 million of debt financing with Morgan Stanley, and it seems fair to assume that this money was desperately needed to continue operations. The record reveals that AAI did not want anything to disrupt this financing and that some members of the board worried that terminating Walker would do just that. In this context, paying Walker 18 months of severance (which would amount to $375,000 unless AAI defaulted, a risk later borne out) to ensure that his firing not disrupt negotiations for $80 million of capital probably looked like a pretty good trade. In fact, especially since he did not end up getting what he bargained for, Walker could make a better argument that he did not get reasonably equivalent value for what he gave up—a job in the aviation industry he could easily have gotten because of his high reputation (as the district court found) and any right to sue for his termination.

20

AAI's arguments to the contrary also do not persuade us. While not advanced in its brief, AAI suggested below that Walker's non-compete agreement lacked value because he could not point to any other employment opportunity he forewent. Further, at oral argument, AAI advanced the theory that any value was not reasonably equivalent because it was Walker—and not the Board—who presented the initial financial terms of his departure. Walker is right that the first argument presents a classic Catch-22: the only way for Walker to show a competing offer would be to violate the very spirit of the agreement he entered into with AAI. And, again, the second argument lacks merit because while Walker presented the initial terms of his departure, the Board—after a negotiation that resulted in less favorable terms to Walker—agreed to those terms.

We are also unpersuaded by the two cases AAI cited to suggest that non-compete agreements have no value. As Walker suggests, both are inapposite here. In *In re Joy Recovery Tech. Corp.*, the trustee was seeking to recover money paid to the former chairman of the board and 50% owner of the company, Mark Chang, as part of a leveraged buyout of his 50% interest in the company. 286 B.R. at 61. In this context, the court found Chang's non-compete valueless because—before the transaction—Chang already owed a fiduciary duty to the company not to compete with it. *Id.* at 75. No one argues that Walker owed any such duty to not compete with AAI before entering the MOU and Separation Agreements.

*In re Vadnais Lumber Supply Inc.* is similarly irrelevant here. There too the trustee was seeking to recover monies paid for a non-compete covenant given separate consideration in a leveraged buyout. 100 B.R. at 129, 134. And similarly, the individuals

involved already had a fiduciary duty not to compete with the company before the agreement at issue. *Id.* at 136. These factual circumstances distinguish both cases from ours.

We further reject AAI's argument that the bankruptcy court concluded that Walker provided no value to AAI for these severance payments. The portion of the bankruptcy court's decision that AAI relies on concerns whether AAI would receive "new value" from the amount it still owed Walker under the separation agreements following its bankruptcy according to § 547(c). Appellant's App. at 525–28. This is a wholly different inquiry from the one before us here and involved a context in which the burden was on Walker, not AAI. The bankruptcy court's determination on this question has no relevance to our consideration.

Based on this record, the bankruptcy's courts findings, and AAI's argument before us, we fail to see how any reasonable court could find anything other than reasonably equivalent value for these transactions. From the bankruptcy-court findings and the undisputed record, it is obvious that AAI did not give Walker "free money" or the like, but compensated him for money he otherwise could have earned. In return for this compensation, AAI got the benefit of avoiding a possible lawsuit and an unhelpful, high-profile mess as it sought the needed $80 million in outside financing.

Given this determination, we need not consider AAI's solvency, the second step of this inquiry.[8] We conclude that the BAP properly affirmed the bankruptcy court's denial

---

[8] We do note, however, that in examining AAI's solvency while deciding AAI's § 547 claim, the bankruptcy court found that AAI was solvent for February, March,

of AAI's alternative claim for avoidance and recovery under the non-insider portions of 11 U.S.C. § 548.

## CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the Bankruptcy Appellate Panel.  The Motion for Substitution of Counsel is GRANTED.

_____

and May 2007, the months in which it incurred its obligations to Walker. We believe this finding was not clearly erroneous. AAI's arguments for relief on § 548(a)(1)(B)(ii)(I) would thus fail—regardless of whether or not it received reasonably equivalent value when the obligations were incurred—because it was solvent on each relevant date.